Schoepple, Appellant, *v.* Schoepple.

558

Argued June 11, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Gary Robert Fine,* for appellant.

No appearance entered nor brief submitted for appellee.

OPINION BY SPAETH, J., March 29, 1976:

This case involves the construction and application of Rule 1137 of the Pennsylvania Rules of Civil Procedure, which was promulgated in response to the United States Supreme Court's decision in *Boddie v. Connecticut,* 401 U.S. 371 (1971), that due process forbids a state to deny a person access to its divorce courts solely because of his indigency.[1] *See* Goodrich-Amram, *Standard Pennsylvania Practice* (Supp. 1975 to Binders 1 & 2) at 647, 726.

Appellant, Margarete Wilhelmine Cramer Schoepple, filed a petition pursuant to Rule 1137 on November 4, 1974, seeking leave to proceed in a divorce action without paying the costs of the action. After a hearing held on November 26, 1974, the court below found that appellant

---

1. Pa.R.C.P. 1137(a), 42 Pa. C.S., provides: "Prior to the commencement of the action, or at any time during its pendency, upon petition of a party averring his inability to pay all or part of the costs of the action, the court, upon being satisfied of the truth of the averments of the petition, shall enter an order permitting him to proceed upon payment of only those costs which the court finds he is able to pay. Costs include masters' fees and stenographic charges. The petition [*sic*] must disclose his full financial condition including his income and property. No filing fee shall be required for the filing of the petition."

was not able to pay the Master's fee but was able to pay the fees of the Prothonotary, Sheriff, and court stenographer.[2] The court, therefore, by order of November 27, excused appellant from paying the Master's fee, and provided that when she had paid the other fees, a Master would be appointed. We have decided that the court erred in its construction of Rule 1137, and improperly considered certain factors in reaching its conclusions. We therefore reverse.

The parties were married on May 21, 1948, in Munich, Germany. Appellee left appellant at the end of September, 1960, while stationed in Germany with the United States Army, and appellant has not seen him since that time. Appellee's last known address is in the Federal Republic of Germany. Appellant last heard from appellee when he telephoned her in 1968, to say that "[h]e want[ed] to come home and die" (N.T. 13). The parties have two grown male children, who, appellant testified, are financially unable to assist her in obtaining a divorce (N.T. 10-12). Appellant testified that she wanted a divorce because "I don't need a man hanging on my shoulders, after he left us completely without a cent for fourteen years" (N.T. 13).

Appellant's petition under Rule 1137 showed a monthly income of $172.64, consisting of public assistance payments and minimal wages earned as a cleaning lady. She owns an automobile, apparently inherited from her father (N.T. 13), with an appraised value of $200.00. Appellant's monthly expenses are $158.31. These expenses include a monthly installment payment of $15.00 for a color television set that appellant had purchased two months before the hearing for $316.94. This purchase was the main reason for the lower court's refusal to excuse appellant from paying all of the fees incident to her divorce action (N.T. 4-5; Memoran-

---

2. These fees total approximately $55.00. *See* Memorandum Opinion at 2.

dum Opinion, at 2). Appellant testified that she made the purchase to provide her with a diversion at home, stating that "I don't go anywhere. I don't go to no movies" (N.T. 4). The court, however, was unimpressed by this explanation, stating that it could "see no reason why she couldn't pick up $15.00 a month to pay a lawyer after she finishes paying [for] the colored T.V." If appellant did this, she would have to wait about twenty months before she could proceed with her divorce action (N.T. 5).

The lower court's emphasis on appellant's installment payments was error. Under Rule 1137 the issue is whether the petitioner has shown "his inability to pay all or part of the costs of the action." This issue is financial, not moral. It may be that appellant was extravagant in purchasing the television set; if so, however, that fact would not by itself preclude a finding of inability to pay costs.

In *Gerlitzki v. Feldser*, 226 Pa. Superior Ct. 142, 144, 307 A.2d 307 (1973), we construed a statute[3] that permitted a court to grant leave to appeal *in forma pauperis* from an award of arbitrators if the party "shall therein set forth that, by reason of poverty, he is unable to pay the costs of the suit." The issue was whether the petitioners, who were making installment payments on a station wagon, truck, and television set, met this test. In holding that they did, we said,[4] *id.* at 144-145, 307 A.2d at 308:

"As a matter of fact: If petitioners refuse to make the installment payments, the station wagon, truck, and television set will be repossessed. That will not make petitioners any more able to pay the costs. Presumably the installment payments are required by legally enforcible sales agreements. Petitioners cannot escape the agreements simply by submitting

---

3. Act of June 16, 1836, P.L. 715, §28, 5 P.S. §72.
4. JACOBS, J., filed a dissenting opinion, in which WRIGHT, P.J., and WATKINS, J., joined.

to repossession. Even if they could, it does not follow that they would then be able to pay the costs, since their only income, so far as appears from the petition, is public assistance benefits of $430 a month.

"As a matter of law: The question put by the Act of June 16, 1836, *supra*, is not whether petitioners are unable to pay the costs but whether they are in poverty. If they are in poverty, it follows that they are unable to pay the costs, and their petition should be granted. The Act, moreover, is to be read not with an accountant's but a housewife's eyes. 'Poverty' does not refer solely to a petitioner's 'net worth' but to whether he is able to obtain the necessities of life. Where, as here, petitioners allege that they have no income except public assistance benefits, and that their net worth is minimal, it appears *prima facie* that they are in poverty."

As this statement indicates, a distinction is to be drawn between the condition of "poverty" (called for by the Act of 1836) and the condition of "inability to pay all or part of the costs" (called for by Rule 1137). Of these two conditions, that of poverty is the more inclusive: one in poverty will not be able to pay costs; one not able to pay costs might not be in poverty (it would depend on the amount of the costs). However, in either case - whether determining the existence of poverty, or the existence of inability to pay costs - the hearing judge must recognize that installment payments are legal obligations, to be charged against a petitioner's available financial resources.

In a sense, the lower court in the present case did recognize appellant's legal obligation to make her installment payments, for it provided that she should make them, and then save up the money for the Master's fee. Rule 1137, however, only requires proof of present inability to pay costs. If a petitioner proves such inability, he is entitled to relief. We do not say that the future is to be ignored. Thus a court might find that a

petitioner is not entitled to relief where, although unable to pay costs at the moment, he will be able to pay them in the very near future. Such a possibility is not pertinent here, however, since, as has been mentioned, if appellant makes the installment payments, it will be about twenty months before she will be able to pay the Master's fee.

We do not suggest that a hearing judge may not disbelieve the allegations of a petition filed under Rule 1137. *Gerlitzki v. Feldser, supra* at 145, 307 A.2d at 308; *Wilson v. Wilson*, 218 Pa. Superior Ct. 344, 346, 280 A.2d 665, 666 (1971); Pa.R.C.P. 1137(a). All we hold is that if a judge finds that a petitioner is required to make installment payments as alleged in the petition, then he is to charge those payments against the petitioner's resources, and after that, determine "inability to pay all or part of the costs of the action."

Finally, certain other aspects of the case should be mentioned.

The lower court's decision appears to have been influenced, at least to some extent, by the supposed impossibility of ultimately recovering the costs of the action from appellee, who was last known to reside in Germany and whose present whereabouts are unknown. (Memorandum Opinion at 3; N.T. 6, 8). This was improper, since Rule 1137(b) specifically provides that "[t]he petition, shall not be denied or delayed because of defendant's financial ability to pay the costs."

In addition, in framing its order the lower court expressed doubt whether any statute permitted the expenditure of county funds for the Master's fee (Memorandum Opinion at 3). However, *Boddie v. Connecticut, supra*, holds that due process requires a state to afford a person free access to its divorce courts where a good faith showing of indigency has been made. *See also, Wilson v. Wilson, supra.* In a Rule 1137 hearing, therefore, it is improper for a court to consider which governmental entity will ultimately be responsible

for payment of waived costs. *County of Berks v. Denton*, 10 Pa. Commonwealth Ct. 371, 374, 309 A.2d 736 (1973).

Arguably, we might remand for a further hearing consistent with this opinion. Here, however, petitioner is so clearly indigent that we have concluded that remand is unnecessary.

The order of the lower court is reversed, and the court is directed to appoint a Master and to permit appellant to proceed with her divorce action without paying any costs or fees.

VAN DER VOORT, J., concurs in the result.

JACOBS, J., dissents.

CONCURRING OPINION BY CERCONE, J.:

While I join in the majority opinion, I wish to note that I do not read that opinion to stand for the proposition that mere insolvency is sufficient to sustain a petition under Rule 1137. Formulated to comply with *Boddie v. Connecticut*, 401 U.S. 371 (1971), Rule 1137 should not be read so broadly as to include those persons who, by living less extravagantly, could readily reserve enough money to pay the costs of their divorces. The language quoted above from *Boddie v. Connecticut* implies that the costs of litigation need not be borne by the state when, by budgeting, the litigants might meet their own expenses. In the instant case there is no indication that appellant's financial situation might significantly change in the foreseeable future, nor is there any indication that appellant could realistically alter her life style to save the money to pay the fees and costs. Similarly, there were no such indications in *Gerlitzki v. Feldser*, 226 Pa. Superior Ct. 142 (1973), upon which the majority opinion heavily relies.

CONCURRING OPINION BY PRICE, J.:

To the extent that the majority opinion holds that all installment payments must be charged against financial resources in a determination of "inability to pay" as

provided in Rule 1137, I disagree. Such a holding may, and probably will, be construed to qualify persons for relief under the rule in the most outrageous of situations, and would, to my view, further encourage personal deficit financing and credit card living. The distinction attempted by the majority between present inability to pay versus ability to pay in the very near future is, to me, impossible to achieve. Further, although the distinction is noted, it is later ignored in the majority holding when it is said: "All we hold is that if a judge finds that a petitioner is required to make installment payments as alleged in the petition, then he is to charge those payments against the petitioner's resources, and after that, determine 'inability to pay all or part of the costs of the action.' " (Majority Opinion, page 563).

Perhaps this concurring opinion conjures visions of disaster which will never become reality and assumes a defect in human nature that in truth does not exist. Perhaps! Nevertheless, in order to avoid that risk, however slight, the majority conclusion would better be qualified if its holdings were confined to the circumstances here presented by appellant. As Judge JACOBS has said, in speaking for the dissenting members of this Court in *Gerlitzki v. Feldser*, 226 Pa. Superior Ct. 142, 145-146, 307 A.2d 307 (1973), there is considerable discretion vested in the lower court in examining such a petition so that unworthy persons who are not indigent may not enjoy the privileges extended to them without the payment of fees and costs. To that I would add further that this judicial exercise of discretion is granted in part to prevent abuses that may or may not be conjured visions.

I agree with the majority conclusions as to appellee's status and the ultimate responsibility for the payment of waived costs, and further agree that based upon the circumstances here presented the order of the lower court must be reversed, since under the circumstances

here presented the denial of relief was an abuse of discretion.

WATKINS, P.J., joins in this concurring opinion.