# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| BRIAN SHORE, | : | No. 25 MAP 2017 |
| | : | |
| Appellant | : | Appeal from the Commonwealth Court |
| | : | Order dated April 19, 2017, exited April |
| | : | 20, 2017, at No. 94 MD 2017. |
| v. | : | |
| | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, | : | |
| | : | |
| Appellee | : | |

## CONCURRING STATEMENT

**JUSTICE WECHT**                                                    **FILED: January 18, 2018**

Dating back to the Magna Carta and its tenets of basic fairness is the maxim that the poor must have the ability to access the courts of justice.[1] The authority of the judiciary to permit litigants to proceed *in forma pauperis* ("IFP") mitigates the formidable cost of litigation to the indigent, ensuring that our courthouse doors are always open, even to those who are poor. This is the promise of Rule 240 of the Pennsylvania Rules of Civil Procedure. Pa.R.C.P. 240. But this promise may prove illusory to the prisoner who seeks to litigate a non-frivolous claim, but is blocked at the outset by an insurmountable filing fee. For many prisoners, filing a complaint in state court can mean choosing between pursuing a valid cause of action and acquiring day-to-day

---

[1] *Nulli vendemus, nulli negabimus aut differemus, rectum aut justiciam.* "To no one will we sell, to no one deny or delay right or justice." Magna Carta, 40 John (1215) (translated into English by G.R.C. Davis, Magna Carta 23-33 (London: British Museum, 1963)).

necessities, a dilemma that necessarily undermines the promise provided by the Magna Carta and our jurisprudential foundations.

Presently before this Court is the Commonwealth Court's denial of the IFP petition filed *pro se* by Brian Shore. Shore is a prison inmate. He filed a petition pursuant to Rule 240 reflecting that he is incarcerated. Despite Shore's incarceration, the Commonwealth Court denied his petition, because the approximately $200 balance in his prison account exceeded the $67.50 filing fee for his complaint. This Court affirms this determination by *per curiam* order. Based upon our deferential standard of review, I am constrained to concur in this disposition. I agree that the Commonwealth Court probably did not abuse its discretion in denying IFP status in this case. However, the Commonwealth Court's rejection of Shore's petition based upon this single factor gives me some pause, considering that the filing fee constitutes one-third of Shore's net worth. I write here to express my concern over the lack of guidelines pertaining to a court's exercise of discretion under Rule 240.

In Pennsylvania, a party who is "without financial resources to pay the costs of litigation is entitled to proceed *in forma pauperis*." Pa.R.C.P. 240(b) (emphasis added). This rule recognizes that court costs may be impossible for some litigants to afford. The rule permits the indigent litigant to present her claims in state court and to access the justice system without paying costs or fees to the court. Pa.R.C.P. 240(f). The petitioner files the petition to proceed IFP simultaneously with the commencement of the action, on a form prescribed by the rule. Pa.R.C.P. 240(c), (h). This form requires the petitioner to list wages and other income, assets, debts and obligations, and dependents. It includes as "other income" social security benefits, support payments, disability payments, unemployment compensation and supplemental benefits, workers' compensation, public assistance, and "other." Pa.R.C.P. 240(h).

Prior to acting upon a petition to proceed IFP, a trial court may dismiss the action "if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous." Pa.R.C.P. 240(j)(1). A frivolous action is one that "lacks an arguable basis either in law or in fact." Pa.R.C.P. 240, Note (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)). This provision permits the trial court to review the merits of the complaint before determining whether to grant IFP status to the litigant. *See, e.g., Jones v. Doe*, 126 A.3d 406 (Pa. Cmwlth. 2015); *Ocasio v. Prison Health Services*, 979 A.2d 352 (Pa. Super. 2009); *Bennett v. Beard*, 919 A.2d 365 (Pa. Cmwlth. 2007).

An order denying a petition to proceed IFP is a final, appealable order, *Grant v. Blaine*, 868 A.2d 400, 402 (Pa. 2005), which is reviewed for an abuse of discretion or an error of law. *Amrhein v. Amrhein*, 903 A.2d 17, 19 (Pa. Super. 2006). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Paden v. Baker Concrete Constr., Inc.*, 658 A.2d 341, 343 (Pa. 1995) (citing *Mielcuszny v. Rosol*, 176 A. 236 (Pa. 1934)).

The abuse of discretion standard is highly deferential. This does not mean that discretion is unlimited or unfettered. In the IFP context, guidance is scarce, both for the trial court making the initial decision and for the appellate court reviewing that decision. Rule 240 provides the procedure for obtaining IFP status, but articulates no standards. Through precedent, courts of this Commonwealth have held that the considerations that drive the IFP determination cannot be reduced to a simple formula of assets and debts. Rather, upon receipt of a petition to proceed IFP, the trial court must satisfy itself of the truth of the averments contained therein, *In re Adoption of B.G.S.*, 614 A.2d 1161 (Pa. Super. 1992), and consider all of the facts and circumstances of the litigant's situation,

both financial and personal. *Stein Enterprises, Inc. v. Golla*, 426 A.2d 1129, 1132 (Pa. 1981); *see also D.R.M. v. N.K.M.,* 153 A.3d 348, 351 (Pa. Super. 2016) (providing that the litigant's "expenses and the realities of life" were appropriate considerations in resolving a request to proceed IFP); *Gerlitzki v. Feldser*, 307 A.2d 307, 308 (Pa. Super. 1973) (holding that the poverty required in the then-existing IFP statute "does not refer solely to a petitioner's 'net worth' but to whether he is able to obtain the necessities of life").

In this case, Shore submitted the form required by Rule 240(h), averring that he had no material assets and asserting that he lacked the financial resources to pay the costs of litigation. Shore's net worth was limited to the approximately $200 balance in his prison account. The Commonwealth Court held no hearing on Shore's petition. Rather, based solely upon the balance of Shore's prison account, the Commonwealth Court held that Shore could afford the $65.50 filing fee, and denied IFP status. In rejecting Shore's petition, the Commonwealth Court has concluded that an inmate for whom the filing fee constitutes one-third of his net worth has the financial resources to file a claim.[2]

Before this Court, Shore asserts that the expenses for which he is responsible include personal hygiene products such as soap, shampoo, toothpaste, lotion, deodorant, toothbrushes, mouthwash, dental floss, band-aids, tissues, combs, Q-tips, nail clippers, razors, sewing kits, laundry detergent, over-the-counter medication, and a $5 co-pay every time he visits the doctor for his chronic back and knee pain. Although

---

[2]  This is not the first time this Court has been confronted with the Commonwealth Court's denial of IFP status based upon the amount in the inmate's account exceeding the filing fee. *See, e.g., Amodeo v. Pennsylvania Dep't of Corr.*, 12 M.D. 2017 (Pa. Cmwlth. Feb. 15, 2017), *aff'd per curiam*, 170 A.3d 991 (Pa. 2017) (revocation of IFP status); *Amodeo v. Pennsylvania Dep't of Corr.,* 536 M.D. 2016 (Pa. Cmwlth. Oct. 21, 2016), *aff'd per curiam* 168 A.3d 135 (Pa. 2017).

the Department of Corrections ("DOC") provides Shore with three uniforms per year, Shore asserts that these items wear out within the year and that he is compelled to purchase additional clothing with his own funds, as well as shoes with which to exercise. In addition, Shore must spend his limited funds on pens, pencils, paper, greeting cards, and phone cards to stay in contact with family. For any formal correspondence or legal filings, Shore is responsible for the costs of a typewriter, typewriter ribbon, correction tape, envelopes, and copy cards. Shore asserts that he must maintain a balance in his prison account so that he is ready and able to draft and print motions and briefs related to his litigation, so that he is able continuously to replenish his supplies, and because an inmate generally should maintain an emergency fund to cover unforeseen expenses such as additional postage, or to pay the expenses associated with leaving prison when permitted to attend the funeral of a family member. Shore earns approximately $50 per month in his prison job.

Shore did not apprise the Commonwealth Court of his financial obligations when he submitted his petition to proceed IFP, as is required by Rule 240(h). For this reason, and this reason alone, there is no record basis to conclude that the Commonwealth Court abused its discretion in rejecting Shore's petition. *See Amrhein*, 903 A.2d at 22 (requiring the trial court to consider not only the litigant's income, but also the litigant's debts and obligations as delineated in the IFP petition).

If the record supported Shore's assertions regarding his monthly financial obligations, I would reject the Commonwealth Court's conditioning of Shore's ability to present potentially meritorious claims upon his willingness to part with one-third of his assets. This 33% financial burden that the Commonwealth Court imposed upon Shore is equivalent to imposing a filing fee of $6,600 upon a litigant whose net worth is $20,000, or imposing a filing fee of $41,250 upon a litigant who has $125,000 in assets.

This is, as Shore argues, preposterous. It does not become less so by virtue of Shore's status as an inmate.

I cannot endorse a construction of the inability to pay required by Rule 240 that simply identifies whether the balance in the prisoner's account exceeds the filing fee in order to demarcate paupers from those considered prosperous enough to pay the fee. Such an approach disregards the realities of the financial obligations imposed upon those who, although wards of the state, still must bear a measure of financial responsibility for meeting their day-to-day needs. It is commonly understood that the state provides the necessities of life to inmates. *See, e.g., Buck v. Beard*, 879 A.2d 157 (Pa. 2005). Even though the state is obligated to pay for an inmate's housing, food, medical care, and clothing, it furnishes only the minimum requirements to meet these basic needs. The state is under no obligation to pay for those small physical and material items that might ameliorate some part of the harsh reality of prison life. In addition, prisoners have limited ability to increase their paychecks. The denial of IFP status places significant burdens upon prisoners earning meager incomes.

As the Superior Court has held, IFP status must be considered in light of the necessities of life, and cannot be denied because the individual has some extravagant expense, *Schoepple v. Schoepple,* 361 A.2d 665, 667 (Pa. Super. 1976), or net worth, *Gerlitski*, 307 A.2d at 308. And this Court has established that the calculation of whether an individual is entitled to IFP status is not a mathematical exercise of offsetting credits against debits. *Stein Enterprises*, 426 A.2d at 1132. Rather, all of the factors of the litigant's situation must be taken into account. "[I]f the individual can afford to pay court costs only by sacrificing some of the items and services which are necessary for his day-to-day existence, he may not be forced to prepay costs in order to gain access to the courts, despite the fact that he may have some 'excess' income or unencumbered

assets." *Id.* Although a trial court must exercise its discretion in determining whether to excuse the petitioner from paying the costs of litigation, the trial court should not deny access to the courts simply because of the petitioner's ability to pay "for small physical or material comforts." *In re Smith*, 600 F.2d 714, 716 (8th Cir. 1979).

The United States Supreme Court unanimously has observed that obtaining IFP status does not require one to demonstrate absolute destitution; no party must be made to choose between abandoning meritorious litigation or foregoing the necessities of life. *Adkins v. E. I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). Similarly, over forty years ago, the Third Circuit held that "we do not think that prisoners must totally deprive themselves of those small amenities of life which they are permitted to acquire in a prison or a mental hospital beyond the food, clothing, and lodging already furnished by the state. . . . [t]hese need not be surrendered in order for a prisoner or a mental health patient to litigate *in forma pauperis* in the district court." *Souder v. McGuire*, 516 F.2d 820, 824 (3d Cir. 1975) (emphasis added); *see also Smith*, 600 F.2d at 715 ("We cannot accept a construction of [28 U.S.C. § 1915] which conditions the presentation of possibly meritorious claims on the plaintiff's willingness to become completely destitute.").

Consistent with this precedent, consideration of the individual circumstances of a prisoner involves more than a comparison between the balance of the inmate's prison account and the requisite filing fees. It also encompasses an examination of the prisoner's monthly expenditures and, more broadly, a recognition that prisoners are often, due to their status as prisoners, indigent. These inmates are faced with unenviable choices; choosing, for example, between making co-payments for needed medical care and bringing a lawsuit to challenge DOC policies. By restricting the ability of prisoners to bring a lawsuit without consideration of the expenses to which the

prisoner is obligated, and without recognizing the practical necessity of maintaining an emergency fund of money, our courts may be creating an arbitrary barrier to accessing the legal system. When the filing fee represents a significant portion of the prisoner's assets, denying IFP status may effectively put the prisoner out of court. *See Grant*, 868 A.2d at 403 (improper denial of IFP status is an improper denial of access to the courts, in that a litigant who is denied the ability to bring a cause of action due to his true inability to pay the costs is effectively put out of court).

Prior to passage of the federal Prisoner Litigation Reform Act of 1996 (the "PLRA"),[3] an indigent prisoner was able to sue in federal court without paying filing fees. 28 U.S.C. § 1915(a) (1948). Federal courts in some districts established inflexible dollar limits on the funds a prisoner could possess and still be granted IFP status. FEDERAL JUDICIAL CTR., RESOURCE GUIDE FOR MANAGING PRISONER CIVIL RIGHTS LITIGATION 18 (1996) (such districts include the District of Arizona ($400); Southern District of California ($400); Middle District of Florida ($120); District of Kansas ($150); District of New Jersey ($200); Western District of Oklahoma ($200); and Western District of Missouri ($1,200)). The Courts of Appeals viewed these inflexible standards with disfavor, finding that they unduly restricted access to the courts. *Id.* (citing *Souder*, 516 F.2d at 823–24 (reversing the denial of IFP status premised upon an account balance of $50.07); *Smith*, 600 F.2d at 716 (reversing the denial of IFP status as to the litigation

---

[3] With the PLRA, Congress made prisoners ineligible for waiver of the filing fee. 28 U.S.C. § 1915(b)(1) (1996). A prisoner who is granted IFP status is permitted to pay the filing fee in an initial partial payment followed by installment payments. *Id.* § 1915(b). The ability to pay the filing fee over time, rather than upfront, depends upon the inmate's statement of assets and a certified copy of the inmate's account statement for the prior six months. *Id.* at § 1915(a). Like Rule 240, the PLRA provides procedure but no guidelines.

expenses to a prisoner where the filing fee represented about 30% of the prisoner's account balance)).

Prisoners have a due process right of access to the courts, *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996); *Burns v. Ohio*, 360 U.S. 252, 258 (1959), and the right to test the constitutional adequacy of their treatment against legal standards intended to delineate the limits of correctional authority.[4]   Rule 240 offers court access for impecunious litigants, including prisoners, seeking to redress wrongs.   However, the lack of guidance in Rule 240 for addressing petitions to proceed IFP may present an obstacle to judicial efficiency, and leaves me questioning whether there is a better way.

For instance, rather than addressing petitions to proceed IFP on a case-by-case basis without the use of objective standards, perhaps trial courts should have financial guidelines available to consult and to guide their exercise of discretion.   These standards could be public and available to prisoners who seek IFP status, and could be consulted along with an evaluation of individual circumstances.   Clear standards would mitigate the appearance of arbitrariness that the abuse of discretion standard permits.

Although Rule 240(h) requires the trial court to consider government benefits as income in determining whether an individual has the resources to pay the costs of litigation, the Superior Court has interpreted the Rule as not permitting the trial court to consider the eligibility requirements for government benefit programs.  *D.R.M.*, 153 A.3d at 352; *Amrhein*, 903 A.2d at 19 (holding that the trial court abused its discretion in considering income guidelines to access benefits provided by the Neighborhood Legal

---

[4]   The public additionally has an interest in the adjudication of meritorious claims brought by inmates, which impact prison management.  *See, e.g.*, William Bennett Turner, *When Prisoners Sue: A Study of Prisoner Section 1983 Suits in the Federal Courts*, 92 Harv. L. Rev. 610, 633–35 (1979) (concluding that prisoner litigation led to increased appropriations for corrections departments).

Services Association in resolving a petition to proceed IFP, as this was in direct conflict with the information required by Rule 240(h)).  In other words, as the law stands today, a petitioner's poverty level may qualify her for public assistance, but, ironically, the income from public assistance could disqualify her from IFP status.

Other jurisdictions take different approaches, examination of which may present alternatives for this Court to consider.  In Maine, for example, there is "a presumption that a moving party is without sufficient funds to pay required fees or costs if the moving party's affidavit states that the person's income is derived from poverty-based public assistance programs."  Me.R.C.P. 91(3).

Other jurisdictions expressly require consideration of the federal poverty guidelines, which are published annually by the United States Department of Health and Human Services and used to determine financial eligibility for certain federal programs.  *See, e.g.*, KY.REV.STAT.ANN. § 31.120; *Potnick v. E. State Hosp.*, 701 F.2d 243 (2d Cir. 1983) (granting IFP status where the petitioner's monthly income of public assistance was below the poverty level).  In Colorado, by Chief Justice Directive, an applicant qualifies for the waiver of court costs if her income is at or below established income eligibility guidelines (which are set at 125% of the federal poverty level), and has liquid assets of less than $1,500.  Chief Justice Directive No. 98-01, Office of the Chief Justice (March 2017).

Louisiana combines the inquiries into public assistance and poverty, and has established a rebuttable presumption that a litigant qualifies for IFP status if the litigant receives public assistance or the litigant's income is less than or equal to 125% of the federal poverty level.  La.Code Civ.P. 5183(B).  Moreover, financial help from friends or family who have no duty to support the litigant does not count towards income.  *Hollier v. Broussard*, 220 So.2d 175, 177 (La. App. 1969).  Minnesota follows similar

guidelines.  *See* MINN. STAT. § 563.01 (permitting the court to waive fees if the litigant is receiving public assistance, is represented by a legal services program, or if the litigant's family income is less than 125% of the federal poverty level).

Rebuttable presumptions of IFP status could be extended to benefit prisoners as well.  Many prisoners, whose necessities are paid for by the state, certainly can be considered presumptively destitute.  Any concern that presuming prisoners to be IFP would increase the volume of frivolous complaints filed by prisoners is ameliorated by Rule 240(j), which permits courts, when possible, to deny a petition to proceed IFP by examining whether the complaint itself is frivolous.  Pa.R.C.P. 240(j).  Presuming IFP status for prisoners would ensure equal access to the courts for the most destitute of our citizens, while, at the same time, employing Rule 240(j) fairly to weed out frivolous actions would maintain judicial efficiency and protect defendants from having to respond to frivolous complaints.  Indeed, the Superior Court has already held that "[w]here . . . petitioners allege that they have no income except public assistance benefits, and that their net worth is minimal, it appears *[p]rima facie* that they are in [poverty]."  *Schoepple*, 361 A.2d at 668 (emphasis added).  Incarceration is akin to being on public assistance, and is no less deserving of being a *prima facie* basis for granting IFP status.

Another possibility is that IFP status should not be an all-or-nothing proposition. Partial filing fees based upon a prisoner's current economic situation could reflect the individual circumstances presented by the petitioner.  These are merely alternatives to the way in which Rule 240 is applied to prisoners specifically and impoverished litigants more generally.  In the absence of rule-based guidance, I would encourage trial courts to employ a liberal interpretation of Rule 240 that favors waiving the fees that act as barriers to the courthouse for potentially non-frivolous actions by inmates.  Although Rule 240 requires the balancing of income and other assets against debts and

expenses, I fear that the courts' belief that all prisoners have all of their needs met by the state eclipses the harsh reality of prison life. I would encourage trial courts to conduct a complete analysis of inmate IFP petitions that considers the financial obligations the prisoner has claimed therein.

It is not difficult to imagine the choices prisoners must make in pursuing redress in the courts. The costs of litigation may prove daunting, and may transform access to the courts into a luxury few prisoners can afford. It is too simple to suggest that courts have the tools and the discretion to open the courthouse doors to those who cannot otherwise enter due to prohibitive costs. Trial courts are passive fora, waiting for petitions to proceed IFP to trigger the exercise of their discretion. This Court, however, has the rule-making authority to establish reform, if reform is, as I believe, warranted. I recommend that our Civil Procedural Rules Committee[5] take the time to examine the concerns that I have raised herein. Although Rule 240 is intended to provide waiver of the incidental costs of litigation to those who lack the financial resources to pay them, I fear that, at least as applied to prisoners, Rule 240 can prove illusory. Addressing this problem will take us one step closer to the proverbial fair trial, irrespective of poverty, promised since the Magna Carta.

---

[5] It may very well be that other committees, such as the Appellate Court Procedural Rules Committee or the Criminal Procedural Rules Committee, should also be involved in this examination.