426 A.2d 1129

STEIN ENTERPRISES, INC., Appellee,

v.

Stephen D. GOLLA, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 26, 1981.

Decided March 13, 1981.

504

Louis M. Shucker, John S. Alexander, Alan Linder, Reading, for appellant.

Roderick G. Snyder, Asst. County Sol., Louis R. Rizzuto, Reading, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

LARSEN, Justice.

This is an appeal from a per curiam order of the Superior Court (Hoffman, Van der Voort and Spaeth, JJ., dissenting) affirming an order of the Court of Common Pleas of Berks County. We granted the petition for allowance of appeal in order to define the standards for the waiver of costs in appeals from adverse arbitration awards under the Act of June 16, 1836, P.L. 715, §§ 27, 28, as amended, 5 P.S. §§ 71, 72.

In 1976, an arbitration award in the amount of $587.02 was entered against appellant, Stephen D. Golla. Appellant, desiring to appeal this award to the court of common pleas for a trial de novo before a jury, filed a petition with the court of common pleas, pursuant to 5 P.S. § 72,[1] alleging

1. 5 P.S. § 72 provides:

 If the party against whom any [arbitration] award shall be made as aforesaid, not being the party by whom the rule of reference was taken out, shall apply by petition, to a judge of the court in which such action is depending, and shall therein set forth that, by reason of poverty, he is unable to pay the costs of the suit, as aforesaid, and shall make affidavit of such facts, it shall be lawful for such judge, after due notice to the opposite party, if he shall be satisfied of the truth of the statements in such petition, to make an order, that the appeal of such party in the case, shall be good, although the costs shall not be paid by him, as aforesaid.

 This statute was repealed by the Act of April 28, 1978, P.L. 202, No. 53, § 2(a)[149], 42 Pa.C.S.A. § 20002(a)[149], and has been superseded by the Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 1726.

that he was unable to pay the "fees, costs and expenses" of appeal.[2] These costs are as follows:

| | |
|---|---|
| Accrued costs | $ 41.45 |
| Appeal bond without surety (rocognizance) | 100.00 |
| Arbitrators' fees | 150.00 |
| Appeal filing fee | 10.00 |
| Total | $301.45 |

In his petition, appellant requested that he be permitted to pay only $51.45—the accrued costs and the appeal filing fee—in installments; and that the remaining $250.00—the appeal bond and the arbitrators' fees—be waived.

Although the lower court failed to make specific findings with respect to appellant's living conditions, the record contains uncontroverted evidence that appellant was 68 years old at the time of the hearing on his petition in 1977; that he had retired in 1971 and had been living since that time on an income comprised principally of Social Security benefits and a small pension; that he resided in a third floor walk-up apartment in the City of Reading; and that although his apartment had no telephone, he did own a black and white portable television, a broken radio, a toaster and a coffee pot.

The court did find as a fact that appellant had a monthly income, including gifts from his sisters, of $273.90; that appellant owned a $31.00 savings account and a 1971 Chevrolet Malibu valued at approximately $1,100.00; and that appellant had monthly expenses for rent, food, clothing, household expenses and automobile operating costs of $263.12. The court further found that appellant could obtain his groceries and other necessities within walking distance of his apartment, and thus that his automobile was not a "necessity." The court concluded that "the defendant could prepay his court costs in full, prepay the arbitrators' fees in full and post a surety bond for $100.00, *if he sold his*

2. 5 P.S. § 71 requires the payment of accrued costs, recognizance and arbitrators' fees before an appeal may be filed. *Cf. Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978) (prepayment of accrued costs, recognizance, appeal fee and arbitrators' fees required by local rule of court as a condition of appeal from an arbitration award).

*automobile."* (Emphasis added). In accordance with its findings, the court refused to waive any costs and ordered that appellant pay $110.00—the appeal bond and the appeal filing fee—in full; that he pay $150.00—the arbitrators' fees—in installments of $10.00 per month; and that he pay any costs of litigation in monthly installments of $10.00 after the termination of the litigation.

We have determined that, under the circumstances of this case, the lower court's order requiring the payment of the $150.00 arbitrators' fees and the $100.00 appeal bond constituted an abuse of that court's discretion.[3]

█ The Legislature, in enacting 5 P.S. § 72, made it lawful for a judge to relieve a party of the payment of "costs of the suit" if that party is, "by reason of poverty", unable to pay those costs. This Court has never had occasion to define those circumstances which constitute "poverty" within the meaning of the statute. The Superior Court has stated that "[t]he Act [of June 16, 1836] . . . is to be read not with an accountant's but a housewife's eyes. 'Poverty' does not refer solely to a petitioner's 'net worth' but to whether he is able to obtain the necessities of life." *Gerlitzki v. Feldser*, 226 Pa.Super. 142, 144, 307 A.2d 307, 308 (1973). We agree with the Superior Court that the determination of "poverty" within the meaning of § 72 is not to be a mere mathematical exercise offsetting credits against debits. Rather, all the facts and circumstances of the situation, both financial and personal, must be taken into the account.

Although courts in other jurisdictions have stated the guidelines differently, they have come to essentially the same practical conclusion: so long as an individual can pay the required costs and still obtain the necessities of life, he will be required to pay those costs before proceeding in

**3.** Neither the accrued costs, nor the appeal filing fee, is at issue on this appeal. With respect to the accrued costs, the lower court granted appellant even more than he requested when it allowed him to defer his installment payments until after this litigation has terminated. With respect to the $10.00 appeal filing fee, appellant has already received essentially the relief he sought, namely, the payment of one $10.00 installment to cover this cost.

court; however, if the individual can afford to pay court costs only by sacrificing some of the items and services which are necessary for his day-to-day existence, he may not be forced to prepay costs in order to gain access to the courts, despite the fact that he may have some "excess" income or unencumbered assets.[4]

■ In this case, the lower court found that appellant's automobile was not a necessity. However, individuals today customarily depend upon automobiles in order to obtain such necessities as food and medical care.[5] In view of the horizontal outgrowth of residential areas and the lack of centralization of vital services, modern society demands increased

4. *See, e. g., Adkins v. E. I. DuPont de Nemours & Co.*, 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948) (United States Supreme Court, construing 28 U.S.C. § 1915 allowing waiver of costs for individuals who, because of poverty, are unable to pay the costs of the suit, stated: "We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. . . To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges."); *Earls v. Superior Court of San Luis Obispo County*, 6 Cal.3d 109, 98 Cal.Rptr. 302, 490 P.2d 814, 818 (1971) (Supreme Court of California, exercising its inherent power to allow individuals to proceed in forma pauperis, stated: "[A]n applicant need not establish total destitution in order to qualify for in forma pauperis relief, although he may be required to establish more than that payment of the filing fee would be burdensome or inconvenient."); *Lancer v. Lancer*, 70 Misc.2d 1045, 335 N.Y.S.2d 138, 142 (1972) (New York Supreme Court, Special Term, construing the term "poor person" as used in CPLR § 1101, stated: "[A] person may, under certain circumstances . . . be a property owner and wage earner and yet qualify to sue as a poor person. For it is not the purpose of CPLR § 1101 that a person should be devoid of all property in order to qualify thereunder as a 'poor person'. Each application must be determined on its individual merits and the test to be applied is whether, upon the particular facts presented, the Court determines that the individual neither possesses nor has available to him sufficient funds to maintain the court action, and that, if relief is not granted . . ., he will in effect be precluded from access to the courts.").

5. The federal bankruptcy laws have recognized the importance of the automobile by allowing an exemption for one motor vehicle from the estate of an individual declaring bankruptcy. *See* 11 U.S.C. § 522(d)(2).

mobility for its citizens. In this case, there is evidence in the record that appellant uses his car to obtain groceries, medical care and other necessities. He also uses his car to visit his sisters, his only living relatives, in an adjacent state. There is no evidence, however, concerning the availability and cost of alternate modes of transportation or the availability and cost of substitute goods and services that appellant now uses his automobile to obtain. We are satisfied from the record that appellant uses his automobile for legitimate, necessary purposes and that he is not attempting to subvert the purpose of § 72 by refusing to sell his automobile in order to generate funds for the payment of court costs. As the Supreme Court of Louisiana has stated:

[A] litigant is not regarded as necessarily disqualified from the privileges granted by the Act [allowing the waiver of costs if an individual is "unable to pay the costs of court, because of his poverty and lack of means"] if he does not dispose of or encumber . . . a modest automobile essential for family transportation.

*Benjamin v. National Super Markets, Inc.*, 351 So.2d 138, 141 (La.1977) (citation omitted).

Without selling his automobile, appellant is clearly unable to pay the costs of an appeal. According to the findings of the lower court, appellant has only $10.78 left at the end of each month. Even if appellant were to devote his entire excess income to paying the $250.00 here in issue, it would take him at least two years to fulfill this obligation: the law must not be so hard a taskmaster. We will not require appellant to contribute his "last dollar" in order to pay the costs of an appeal. The lower court was, therefore, in error when it found that appellant's car was not a necessity and that appellant was not in poverty within the meaning of § 72.[6]

6. While our analysis under § 72 fully justifies our disposition of this case, we note also that in this case, where there is a right to jury trial, that right could be seriously impeded if we were to approve of the reasoning of the lower court to the effect that appellant should sell his automobile in order to raise funds for the costs of an appeal. The sole purpose of the appeal which appellant is attempting to

To the extent that our 1896 decision in *Noyes v. Brooks*, 174 Pa. 632, 34 A. 285, 34 A. 450 (1896), is inconsistent with this opinion, it must be discarded. *Noyes*, our only prior decision construing "costs of the suit" within the meaning of § 72,[7] held that "there is no provision in the act [5 P.S. § 72] . . . authorizing the court or a judge thereof to make an order, in forma pauperis, relieving appellants . . . from complying with the third necessary prerequisite [recognizance] . . ." *Id.*, 174 Pa. at 635, 34 A. at 450.[8] In so holding, this Court relied solely on the wording of §§ 71 and 72. However, the Court in *Noyes* failed to consider the purpose and effect of § 72.

The doctrine of stare decisis does not prevent us from departing from this solitary, stale precedent in order to reexamine and reinterpret § 72 in light of the policy and

obtain is to protect his only valuable asset—his automobile—from execution. Placing appellant in the position of having to lose his automobile in order to obtain a jury trial, the purpose of which is to protect that very automobile from execution, would amount to an "onerous condition . . . which would make the right [to a jury trial] practically unavailable." *Smith Case, infra*, 381 Pa. at 231, 112 A.2d at 629.

**7.** 5 P.S. § 71 enumerates the required costs of appeal. When it was enacted in 1836, § 71 provided:

> Either party may appeal from an award of arbitrators . . . under the following rules, regulations and restrictions:

> . . . . .

> II. Such party . . . shall pay all the costs that may have accrued in such suit or action.

> . . . . .

> III. The party . . . shall enter into the recognizance hereinafter mentioned.

The Act of January 14, 1952, P.L. (1951) 2087, § 4, added the following provision to § 71:

> V. . . . [A]ny party appealing shall first repay to the county the fees of the members of the board of arbitrators herein provided for. . .

The entire statute has now been repealed by the Act of April 28, 1978, P.L. 202, No. 53, § 2(a)[149], 42 Pa.C.S.A. § 20002(a)[149], and superseded by the Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 7361.

**8.** Presumably, the reasoning of *Noyes* also dictates that arbitrators' fees are not "costs of the suit" within the meaning of § 72.

purpose of that statute. As we said in *Mayhugh v. Coon*, 460 Pa. 128, 136, 331 A.2d 452, 456 (1975):

> The doctrine of stare decisis was never intended to be used as a principle to perpetuate erroneous principles of law . . . Where, as here, by our decision [ ] in [*Noyes*] . . . the Court distorted the clear intention of the legislative enactment and by that erroneous interpretation permitted the policy of that legislation to be effectively frustrated, we now have no alternative but to rectify our earlier pronouncements and may not blindly adhere to the past rulings out of a deference to antiquity.

 Section 71 grants any party to compulsory arbitration the right to appeal an arbitration award, subject to the payment of required costs. While the imposition of these costs was certainly within the discretion and power of the Legislature, we think that the Legislature, in enacting § 72, nevertheless recognized that some parties would be unable to pay these costs and that it would be beyond the means of such parties to actually exercise their right of appeal. It is unfair, however, to hold, as did this Court in *Noyes*, that § 72 allows the waiver of some lesser costs, but not of other, more excessive, costs: so long as an appellant's inability to pay some of the costs of an appeal has the effect of precluding that appeal, the purpose of § 72 has been frustrated and the right granted in § 71 has been denied.[9] We conclude, therefore, that the purpose of the Legislature in

9. Since 1952, appeals from arbitration awards have been de novo. 5 P.S. § 71(V). The requirement that costs, fees and recognizance be paid prior to a trial de novo does not per se violate the right to jury trial granted by Article 1, § 6 of the Pennsylvania Constitution. *Smith Case, infra*, 381 Pa. 223, 112 A.2d 625, 55 A.L.R.2d 420, *appeal dismissed*, 350 U.S. 858, 76 S.Ct. 105, 100 L.Ed. 762 (1955). In cases where there is a right to jury trial, however, any interpretation of § 72 which makes payment of arbitrators' fees and recognizance an absolute condition of appeal even for individuals who cannot afford to pay those costs would violate this constitutional provision by imposing "onerous conditions, restrictions or regulations which would make the right [to a jury trial] practically unavailable." *Id.*, 381 Pa. at 231, 112 A.2d at 629.

enacting § 72 was to ensure that qualified parties [10] would be able to take advantage of their right of appeal, regardless of their financial condition.[11] In order to give full effect to the language and purpose of § 72, we hold that the costs of an appeal bond and the arbitrators' fees are "costs of the suit" under § 72.

Accordingly, we direct that an order waiving the arbitrators' fees and the appeal bond be entered. The order of the Superior Court is reversed insofar as it is inconsistent with this opinion, and the case is remanded for further proceedings.[12]

**10.** Section 72 grants relief only to a "party against whom any award shall be made . . ., not being the party by whom the rule of reference was taken out. . ."

**11.** Courts in other states have also found this to be the purpose of similar statutes. *See, e. g., Almarez v. Carpenter,* 173 Colo. 284, 477 P.2d 792, 795 (1970) ("[T]he sole and only purpose of the statute is *to aid* the indigent litigant in getting into court—in effect, *opening* the courts of justice to the poor person." (Emphasis in original.)); *Bejamin v. National Super Markets, Inc.,* 351 So.2d 138, 141 (La. 1977) (purpose of statute is to prevent depriving the individual of his day in court because of lack of financial means).

**12.** Because we have resolved this case on the basis of § 72, we have no need to consider the merits of the constitutional issues also raised by appellant.