**In re Henry Michael KOREN a/k/a Michael Koren d/b/a Skippack Roofing, Debtor.**

**Bankruptcy No. 94–17811DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 5, 1995.

Valerie S. Rosenbluth, Skippack, PA, for debtor.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA.

## OPINION
### DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

Before this court is the Debtor's Application to waive the $160 filing fee and administrative fee, pursuant to the *in forma pauperis* ("IFP") pilot program established in this court and five other bankruptcy courts ("the IFP Program"), despite the fact that a $500 attorney's fee has been paid on the Debtor's behalf. We first review the standards for granting IFP relief, and determine that, putting aside the issue of payment of the attorney's fee, the Debtor clearly qualifies for IFP status. Then, declining to follow two decisions of other IFP Program courts holding that Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 1006(b)(3) bars IFP relief to a debtor when attorney's fees are paid, *In re Thompson,* 177 B.R. 890 (Bankr.W.D.Tenn. 1994); and *In re Takeshorse,* 177 B.R. 99 (Bankr.D.Mont.1994), we hold that F.R.B.P. 1006(b)(3) does not apply to the IFP Program. We will therefore grant the Application.

### B. HISTORY OF THE INSTANT MATTER

On November 30, 1994, HENRY MICHAEL KOREN ("the Debtor") filed a voluntary Chapter 7 bankruptcy case. The Debtor was represented in this filing by Valerie S. Rosenbluth, Esquire, a private attorney ("Counsel"). The prescribed detailed Application for Waiver of the Chapter 7 Filing Fee for Individuals Who Cannot Pay the Filing Fee in Full or in Installments. ("the Application") was executed by the Debtor and presented on the date of filing in lieu of the normal $160 charges.

In that Application, the Debtor disclosed that his sole source of income was social security retirement benefits of $752 monthly, and that his monthly expenses were $998, $695 of which was paid for rent. The Application further stated that the Debtor had no assets other than ordinary household furnishings and clothing except $40 cash on hand. It also disclosed payment of $500 to Counsel's associate as attorney's fees for handling this case.

Although the United States Trustee's office, which is served with all IFP Applications filed in this court five days before they are presented to the assigned judge for consideration, did not object to our granting the Application, one of this court's two assigned IFP Clerks questioned how the Debtor could pay Counsel, but could not pay the filing fee, and recommended that this court schedule a hearing on the Application. On December 8, 1994, in consideration of this request, notice of a hearing before this court on December 22, 1994, was dispatched.

Only Counsel appeared at that hearing. However, since no party, including the United States Trustee, appeared to oppose the Application, we allowed Counsel to certify the pertinent facts. She stated that the Debtor was 66 years old, suffering from Alzheimer's disease, and frequently somewhat disoriented. She also stated that the $500 fee had been paid to her associate by the Debtor's son, Michael Koren ("Michael").

She stated that, when she was unable to reach Michael and the Debtor was unable to post the fee necessary to make a filing to prevent an imminent execution sale on his personal property, she decided to have him fill out and submit an IFP Application.

## C. DISCUSSION

### 1. PUTTING ASIDE THE PAYMENT TO COUNSEL, THE DEBTOR CLEARLY MEETS THE STANDARD FOR PROCEEDING WITH THIS CASE IN FORMA PAUPERIS.

The only accurate general statement that can be made about the precise standards which an application for IFP status must meet is that no definitive standards have been developed by any court or commentator. There are several general pronouncements by appellate courts which have tended to discredit mechanical tests for denial of IFP motions. There are also a few published cases, mostly trial court decisions, in the IFP area, most of which have focused on certain specific aspects of the applicant's financial status which the respective courts deemed questionable. These decisions, on the whole, suggest that the court should attempt to analyze the applicant's entire financial picture in determining whether to allow IFP status. The decisive issue is often how much benefit of any doubt the court wishes to give a particular applicant. Commentators have typically set down the factors that some courts have found decisive and other courts have not, but have not developed any firm criteria of their own.

The most commonly-referenced Supreme Court pronouncement regarding the economic standards to be employed by deciding IFP applications is the following passage from *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948):

> We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the [IFP] statute. We think an affidavit is sufficient which states that one cannot because of his poverty "pay or give security for the costs ... and still be able to provide" himself and dependents "with the necessities of life." To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting he person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution. We think a construction of the statute achieving such consequences is an inadmissible one. *See* cases collected in 6 A.L.R. 1281–1287 [1] for a discussion as to whether a showing of complete destitution should be made under this and similar statutes.

In *Adkins*, the Court reversed the denial of an IFP application of a widow, who owned her own home and lived on rent from part of the home, to avoid paying a $4,000 transcript cost to prosecute an appeal of a Fair Labor Standards Act claim on behalf of her late husband. The lower court's holding was based on its belief that other co-claimants could raise the funds necessary and because it believed that her attorney, working on a contingent fee, could advance the costs. The Court found these reasons to be insufficient grounds for denial of the application.

The most pertinent pronouncements of the Third Circuit Court of Appeals in the IFP area, in *Souder v. McGuire*, 516 F.2d 820, 823–24 (3d Cir.1975); and *Lockhart v. D'Urso*, 408 F.2d 354, 355 (3d Cir.1969), have arisen in prisoner cases, which apparently make up the vast majority of federal district court IFP matters. The *Souder* decision, while implicitly disapproving but not commenting on such decisions as *Ward v. Wer-*

---

**1.** This article squarely addresses the subject of the economic standards for IFP eligibility, but it has not been updated since it was written in 1920.

*ner*, 61 F.R.D. 639 (M.D.Pa.1974) (which granted IFP status to a prisoner with $7.00 in his prison account but denied the applications of other prisoners with $65.00 and $50.00, respectively, on account), 516 F.2d at 821, allowed the IFP application of a prisoner who had $50.07 on account and in addition received $15.00 bi-weekly from his "aged mother." The most pertinent passage from this case, 516 F.2d at 823–24, reads as follows:

> What we have said concerning the complexity of the legal issues involved here amply demonstrates that this habeas corpus petition is not one of the kind which can be litigated on the existence of a fund in the sum of $50.97 which is supplemented by an additional $7.50 per week stipend. The purpose of § 1915 is to provide an entre, not a barrier, to the indigent seeking relief in the federal court. The Supreme Court has recognized that one need not "contribute to payment of costs, the last dollar that they have or can get ..." in order to enjoy the benefits of § 1915. *Adkins,* [*supra* ] ...
>
> In like manner, we do not think that prisoners must totally deprive themselves of those small amenities of life which they are permitted to acquire in a prison or a mental hospital beyond the food, clothing, and lodging already furnished by the state. An account of $50.07 would not purchase many such amenities; perhaps cigarettes and some occasional reading material. These need not be surrendered in order for a prisoner or a mental patient to litigate in forma pauperis in the district court.

In *Lockhart,* commenting on the practice of dismissing *pro se* IFP prisoner cases on their merits without considering the applicant's indigency, the court states as follows, 408 F.2d at 355, that,

> [w]hile there may be extreme circumstances where such a right should be denied for plain lack of merit, we think that, particularly in *pro se* cases, the right to proceed in forma pauperis should generally be granted where the required affidavit of poverty is filed. This approach minimizes, to some extent, disparity in treatment based on economic circumstances. An attack on the truth of such affidavit or the sufficiency of the complaint should be left for appropriate disposition after service has been made on the defendants. *Compare Jordan v. County of Montgomery, Pa., et al.,* 404 F.2d 747 (3d Cir.1969).

This passage may suggest that searching out information beyond the IFP application to determine IFP status may be inappropriate. *See also Sinwell v. Shapp,* 536 F.2d 15, 18–19 (3d Cir.1976); and *Taylor v. Robertson,* 703 F.Supp. 392, 393 (E.D.Pa.1989).

There are several sources which reference factors which courts have generally considered in deciding IFP applications. The most comprehensive discussion in a local decision appears in *United States v. Scharf,* 354 F.Supp. 450, 451–52 (E.D.Pa.) (per NEWCOMER, J.), *aff'd,* 480 F.2d 919 (3d Cir. 1973), in which the court ultimately denied a criminal defendant's application to appeal IFP because he had not only a $60 bank account but also a $1,000 bequest in hand. Initially stating that "there are no hard and fast standards for determining the right to proceed in forma pauperis, ... [t]here is no rubric, or history, or catechism, ..." *id.* at 451, the court enumerates the factors to be considered, *id.* at 452, as

> whether or not the defendant owns any real property or personal property, whether he is employed, whether is he the recipient of a pension, or benefits from Social Security, the number of dependents that rely upon him for support and sustenance, the defendant's present liability, *i.e.,* his outstanding debts, the seriousness of the charge placed against him, his ability to make bail, and the resources and aid that relatives can lend him. The above mentioned factors have no hard or fast application but are used as guidelines for the aid of the decision-maker in determining whether or not to grant or deny the motion.

The two secondary sources which appear to be the most comprehensive in cataloguing factors to be considered in deciding IFP applications are Annot., *Determination of Indigence of Accused Entitling Him to Transcript or Similar Record for Purposes of Appeal,* 66 A.L.R.3d 954 (1975) (hereinafter

"Annot."); and R. Catz & T. Guyer, *Federal In Forma Pauperis Litigation: In Search of Judicial Standards*, 31 RUTGERS L.REV. 655 (1978) (hereinafter "Catz"). The Annot. sets forth several "general principles," *i.e.*, that the determination of indigence is discretional; that indigence is a "relative term;" that it does not require complete destitution; and that the burden of its proof is on the applicant. 66 A.L.R.3d at 962–65. The Annot. then categorizes several factors potentially relevant to IFP applications, collecting cases which have and have not been influenced by these factors, including (1) possible aid from friends or relatives; (2) possible aid from charities; (3) regular employment; (4) earning power; (5) unencumbered assets; (6) retention of counsel; and (7) the particular cost relative to the applicant's financial means. *Id.* at 965–78.

Catz interprets *Adkins* as holding that an IFP applicant's net income and relative liquidity of assets should be given more weight than an applicant's gross income and total assets. 31 RUTGERS L.REV. at 664. Other factors referenced as the most significant in the determination of IFP status by Catz are the applicant's "(1) marital status and number of dependents, (2) place of residence, (3) nature of employment, (4) earning potential even though unemployed, and (5) efforts to obtain employment." *Id.*, citing *Watson v. Ault*, 525 F.2d 886 (5th Cir.1976); *Roberts v. I-T-E Circuit Breaker Co.*, 316 F.Supp. 133 (D.Minn.1970); and *Evensky v. Wright*, 45 F.R.D. 506 (N.D.Miss.1968).

There is surprisingly sparse number of cases which apply the general indigency standards to particular fact situations. One case not arising in the federal courts, but worthy of some consideration, is a decision of the Supreme Court of Pennsylvania in *Stein Enterprises, Inc. v. Golla*, 493 Pa. 502, 426 A.2d 1129 (1981). In defining what constitutes "poverty" under a Pennsylvania state statute relating to appeals from arbitration, 5 P.S. §§ 71, 72, the *Stein Enterprises* court held that "poverty" should be " 'read not with an accountant's but a housewife's eyes,' " citing *Gerlitzki v. Feldser*, 226 Pa.Super. 142, 144, 307 A.2d 307, 308 (1973). 493 Pa. at 507, 426 A.2d at 1132. Thus, the Court determined that "poverty" should not be a "mere mathematical exercise offsetting creditors against debits. Rather, all the facts and circumstances of the situation, both financial and personal, must be taken into account." *Id.* The Court refused to disqualify the applicant, a 68–year–old man living alone in a rented apartment, from IFP status, merely because he could pay the costs if he sold an automobile in which he had about $1,000 equity.[2]

There are a few federal cases decided in other jurisdictions presenting facts which apply the rather vaguely-articulated standards to specific fact situations. Cases in which IFP status was granted include *Potnick v. Eastern State Hospital*, 701 F.2d 243 (2d Cir.1983) (applicant had a public assistance income of $222.00 a month, a checking account balance of less than $60.00, and $13,-600.00 in outstanding debts); *Kelsay v. Milwaukee Area Technical College*, 825 F.Supp. 215, 216 (E.D.Wis.1993) (applicant had a job paying $9.50 per hour, unemployment compensation of $191.00 per week, $500.00 of

---

**2.** The present pertinent Pennsylvania Rule of Civil Procedure ("Pa.R.Civ.P.") addressing IFP application in the state courts is Rule 240. Notably, Pa.R.Civ.P. 240(d)(1) contains the following provisions:

    If the party is represented by an attorney, the prothonotary shall allow the party to proceed in forma pauperis upon the filing of a praecipe which

    (i) contains a certification by the attorney that he is providing free legal service to the party and that he believes that the party is unable to pay the costs, and

    (ii) is accompanied by the affidavit required by subdivision (c) [which requires the applicant to provide certain financial information].

Thus, if Pa.R.Civ.P. 240(d)(1) were applied in our consideration of IFP applications, all or most applicants represented by civil legal services programs and our local bar's model voluntary program for indigent debtors, the Consumer Bankruptcy Assistance Project ("CBAP"), would be accorded IFP status on the mere certification of their counsel.

This rule would not aid the instant Debtor, since he is represented by private counsel who is charging him a fee. We do note, however, that the amount of the fee charged is at the low end of the local "market rate" for representation in a straightforward no-asset Chapter 7 consumer bankruptcy case. *See In re Patronek*, 121 B.R. 728, 734–35 (Bankr.E.D.Pa.1990).

other assets, and liabilities of rent and child support); *Handley v. Union Carbide Corp.*, 622 F.Supp. 1065 (S.D.W.Va.1985), *aff'd*, 804 F.2d 265 (4th Cir.1986) (applicant was unemployed, but had a checking and savings account balance of about $100.00, received $1,400.00 per month in Social Security disability benefits, and had $30,000.00 equity in her home); and *Sejeck v. Singer Mfg. Co.*, 113 F.Supp. 281, 282 (D.N.J.1953) (applicant owned a home, with his wife, but their sole means of support was rent from that home). Cases denying IFP status to selected relevant applicants include *Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir.1988) (applicant's net annual income was approximately $20,000); *Brewster v. North American Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir.1972) (applicant's income was $26,500 annually, although he claimed he could lose his job at any time); *Roberts, supra* (applicant's earning were between $15,000 and $23,000 annually); and *United States v. Pellegrini*, 201 F.Supp. 65 (D.Mass.1962) (applicant and his wife earned $419.97/month and had $5,564.00 equity in two properties).[3]

Prior to the enactment of the law creating the IFP Program, Pub.L. 103–121, 107 Stat. 1153, § 111(d) (1994), codified in Historical and Statutory Notes to 28 U.S.C. § 1930, a debtor could not have the filing fee waived in light of the decision in *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). However, the issue of whether a party could proceed IFP in bankruptcy court in some procedure other than in paying the filing fee, such as in filing an appeal, has surfaced on several occasions.[4]

Bankruptcy courts which have determined that they have the general power to allow IFP applications have nevertheless denied such applications on their merits in several reported cases. These cases include the following: *In re Fromal*, 151 B.R. 733 (E.D.Va. 1993) (appeal sought by debtor who was a suspended attorney, but who was also licensed as a certified public accountant and owned a home worth $162,500 with her husband); *In re Burrell*, 150 B.R. 369, 374 (Bankr.E.D.Va.1992) (appeal by debtor whose income was now $310/week, but who had previously claimed, when his case was in Chapter 13, that his employment income was $30,000 annually and that he had made a $5,000 personal injury settlement); *In re Anderson*, 130 B.R. 497, 500 (Bankr. W.D.Mich.1991) (appeal by debtor whose case had been converted to Chapter 7 but who previously stated that she earned $884 monthly and had $57 excess monthly income in her Chapter 13 Schedules);[5] and *In re*

---

**3.** In assessing the latter three cases, allowances must be made for inflation over the past 20 to 30 years.

**4.** A debate has arisen as to whether a bankruptcy court is a "court of the United States" empowered to grant IFP relief in any circumstances. *Compare In re Perroton*, 958 F.2d 889, 893 (9th Cir.1992); *In re Buck*, 157 B.R. 247 (Bankr. W.D.Pa.1993), citing *In re Becker's Motor Transp., Inc.*, 632 F.2d 242, 247 (3d Cir.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1358, 67 L.Ed.2d 341 (1981); and *In re Bauckey*, 82 B.R. 13 (Bankr.D.N.J.1988) (no power exists), *with In re McGinnis*, 155 B.R. 294 (Bankr.D.N.H.1993); *In re Brasby*, Bankr. No. 89–12147F, Adv. Nos. 89–0561F, 89–0562F (Bankr.E.D.Pa. Jan. 24, 1989) (FOX, J.); *In re Sarah Allen Home, Inc.*, 4 B.R. 724 (Bankr.E.D.Pa.1980) (GOLDHABER, CH. J.); and *In re Weakland*, 4 B.R. 114 (Bankr. D.Del.1980) (power to allow IFP applications does exist). This issue does not arise here, because the IFP Program is expressly authorized by statute.

**5.** The *Anderson* court emphasizes the fact that the debtor's income was not below the "poverty guidelines" established by the United States Department of Health and Human Services. The present poverty guidelines are as follows:

| Size of family unit | Poverty guideline |
| --- | --- |
| 1. | $ 7,360 |
| 2. | 9,840 |
| 3. | 12,320 |
| 4. | 14,800 |
| 5. | 17,280 |
| 6. | 19,716 |
| 7. | 22,240 |
| 8. | 24,720 |

For family units with more than 8 members, add $2,480 for each additional member.

59 FED. REG. 6277 (Feb. 10, 1994).
This court has held that the poverty guidelines are highly relevant in determining whether a debtor would suffer "undue hardship" in not being discharged from a student loan debt under 11 U.S.C. § 523(a)(8)(B). *See In re Bryant*, 72 B.R. 913, 915–19 (Bankr.E.D.Pa.1987). However, allowing debtors to proceed IFP presents quite different considerations. The debtor's

*Shumate,* 91 B.R. 23, 26 (Bankr.W.D.Va. 1988) (appeal by debtor who has "litigated extensively," employed a houseboy for $200/ week, drove a fancy car, and had an $855 bank balance). *Cf. In re Frottier,* 130 B.R. 614, 615–16 (Bankr.S.D.Fla.1991) (even had debtor been able to proceed to file her case IFP, her savings of "less than $700" would disqualify her from obtaining such relief).

On the other hand, debtors who receive welfare benefits, *see In re Melendez,* 153 B.R. 386, 390 (Bankr.D.Conn.1993), and/or are represented by civil legal services programs for the indigent, *see McGinnis, Brasby, Sarah Allen,* and *Weakland, supra,* have usually been successful in establishing IFP status.

■ Applying these albeit vague standards to the facts at hand causes us to conclude that, putting aside the $500 payment to Counsel on the Debtor's behalf, the Debtor is clearly eligible for IFP relief. His monthly income is only slightly above the poverty line and he has no prospect for significantly increasing same during his lifetime. Notably, his monthly rent consumes all but $57 of his monthly income. The Debtor's circumstances are similar to those of the elderly *Adkins* and *Stein Enterprises* litigants, but in several respects it is worse. He owns no home, nor an automobile, and no co-claimants are available to share payments for counsel. He has no assets but modest home furnishings and a small amount of cash on hand. His assistance from Michael appears to have been a one-time grant.

Thus, had it not been for Michael's payment of Counsel's $500 fee, there is little doubt that the Debtor's IFP Application would have been recommended for approval by the assigned IFP Clerk and granted by this court without a hearing. *Cf. In re Clark,* 173 B.R. 142, 146 (Bankr.W.D.Tenn, 1994) (a similarly-situated debtor represented by *pro bono* counsel held eligible to file her case IFP).

"hardship" to make the fee payments should not have to rise to the high level of being "undue."

**6.** One of the most favorable by-products of the establishment of the IFP Program has been the virtual disappearance of such predators from this

## 2. F.R.B.P. 1006(b)(3) SHOULD NOT BE READ TO DENY AN IFP APPLICANT THE RIGHT TO HIRE COUNSEL.

We must now consider whether F.R.B.P. 1006(b)(3), which reads as follows, requires a different result in ruling on the instant Application:

(3) *Postponement of Attorney's Fees.* The filing fee must be paid in full before the debtor or chapter 13 trustee may pay an attorney or any other person who renders services to the debtor in connection with the case.

■ We begin by noting that F.R.B.P. 1006(b)(3) is absolute. Thus, a debtor paying in installments must make the *full* installment payments before paying an attorney or "any other person" *any* fees. *See In re Hansen,* 39 B.R. 68, 70 (Bankr.D.Kan.1984). We should also emphasize that we consider this Rule to be well-advised and very effective to combatting the worst of the lay advocate predators.[6] *See In re Watson,* 1991 WL 269989 (Bankr.E.D.Pa. Dec. 12, 1991).

■ However, F.R.B.P. 1006(b)(3) only defers the payment of fees to counsel who is hired by an applicant until payment of the filing fees in installments is completed. It does not prevent or impede a debtor from hiring chosen counsel and, as is usually necessary, compensating counsel for services rendered at some later point in the case. *But see In re Symes,* 174 B.R. 114 (Bankr. D.Ariz.1994) (counsel representing clients for "no money down" may have the payment obligation discharged). It is not at all clear that F.R.B.P. 1006(b)(3) is meant to apply to an IFP Application situation, since the IFP Program does not allow for partial IFP relief or for a mere deferment in payment. If applied to such a situation, F.R.B.P. 1006(b)(3) would preclude a debtor from choosing and, if necessary, ever compensating counsel of choice if the debtor wished to retain IFP status.

court. Since the inception of the IFP Program in this court on October 1, 1994, no lay advocate has been reported as charging any debtor in this district a fee.

Taken as a whole, F.R.B.P. 1006 appears inapplicable to a situation where a debtor is permitted to proceed IFP. F.R.B.P. 1006(a) requires payment of the fee unless payments are made in installments pursuant to F.R.B.P. 1006(b). The IFP Program legislation, meanwhile, provides an express exception to the dictates of F.R.B.P. 1006. It therefore would seem quite unusual to employ a particular aspect of F.R.B.P. 1006 to applications under the IFP Program.

Second, we note that it is not traditional in other areas of the law to deny IFP status to applicants merely because they have hired and paid counsel. The successful IFP applicants in *Adkins, Handley,* and *Sejeck, supra,* all appear to have been represented by private counsel. Although the ability to pay counsel has been a factor, among others, in some courts' denials of IFP applications, it has expressly been held *not* to be a factor by several other courts which have granted IFP applications. *See* Annot., *supra,* 66 A.L.R.3d 972–74.

Particularly noteworthy is the holding of *Fullan v. Commissioner of Corrections,* 891 F.2d 1007, 1010–12 (2d Cir.1989), *cert. denied,* 496 U.S. 942, 110 S.Ct. 3229, 110 L.Ed.2d 675 (1990), that a court rule which denied a free transcript to defendants with paid private counsel is violative of the equal protection clause of the fourteenth amendment to the United States Constitution. That case presented, moreover, the far less compelling scenario of an allegedly indigent criminal defendant whose friends and family had been willing to compensate the defendant's counsel in a total amount of $37,500, but were unwilling to compensate the state for a $962.50 transcript. Here, the contribution of Michael was apparently a one-time grant of $500, and the $160 filing fee cost constituted a relatively large additional investment. We therefore believe that, if F.R.B.P. 1006(b)(3) could be applied to the IFP Program, contrary to our belief, it would run afoul of the equal protection clause.

Counsel argued at the December 22, 1994, hearing that F.R.B.P. 1006(b)(3) was inapplicable to the instant matter because it only precludes "the debtor" from paying counsel prior to remittance of the full filing fee, not someone, such as Michael, acting on the Debtor's behalf. We do not accept this argument. Nor, apparently, did the court in *Thompson, supra,* where IFP status was denied even though the debtor's husband paid a $500 attorney's fee, not the debtor.

We agree with *Thompson* that a payment by a third party on behalf of the debtor should fall within the scope of F.R.B.P. 1006(b)(3). Otherwise, that Rule would be subject to a loophole which would undermine its prophylactic efficacy. Where we disagree with *Thompson* is the conclusion that F.R.B.P. 1006(b)(3) applies at all to a IFP Program application.

As to *Takeshorse, supra,* the other case invoking F.R.B.P. 1006(b)(3) in an IFP Program context, we note that the court did not deny the application directly on the basis of the debtor's alleged violation of F.R.B.P. 1006(b)(3). Rather, the court expresses skepticism of the debtor's poverty generally, and her ability to pay $450 to counsel from her own resources is cited as an example of the basis for such skepticism.[7]

In any event, we disagree with the result and reasoning of both *Thompson* and *Takeshorse* for the reasons stated herein. We therefore conclude that F.R.B.P. 1006(b)(3) is inapplicable and should not invalidate the Debtor's status as otherwise clearly eligible for IFP Program approval.

## D. CONCLUSION

An Order granting the Debtor's IFP Application will be entered.

## ORDER

AND NOW, this 5th day of January, 1995, it is

---

7. Otherwise, the facts of *Takeshorse,* in our view and, we would submit, that of *Adkins, supra,* and many of the other cases cited at pages 742–46 *supra,* would support the granting of the IFP Application in that case. The *Takeshorse* debtor claimed to have but $25 in non-exempt property and a salary level under the poverty line ($352.24/month), which was exceeded by the debtor's declared living expenses of $526 monthly. Of course, if a debtor is not credible, these declarations mean little and denial of an IFP Application may be justified.

ORDERED, after a hearing of December 22, 1994, on the Debtor's Application for waiver of the Chapter 7 filing fee, the Application is GRANTED; and the above-referenced Debtor may proceed to file and prosecute this bankruptcy case *in forma pauperis,* without pre-payment of any filing costs or fees, pending further Order of this court. This Order is subject to being vacated if the court becomes aware that such action is inappropriate upon advice of future developments or further information.